E. CONSTANTIN, Jr., and Mrs. E. Constantin, Jr.,

v.

UNITED STATES of America.

Civ. No. 8391.

United States District Court
N. D. Texas,
Dallas Division.

Oct. 24, 1960.

Jack Gray Johnson and Hubert D. Johnson, Carrington, Johnson & Stephens, Dallas, Tex., for plaintiffs.

W. B. West, III, U. S. Atty., Fort Worth, Tex., and W. E. Smith, Asst. U. S. Atty., Dallas, Tex., for government.

DAVIDSON, District Judge.

This is an action for the recovery of Federal income taxes in the amount of $28,158.80 paid by plaintiffs for the calendar year of 1951. There is only one issue in the case, and that is the issue of whether the gain on certain sales of May wheat futures contracts made by plaintiffs during the year of 1951 are entitled to long term capital gain treatment. The solution of this question must depend on the interpretation of a statute having an effective date of September 23, 1950.

Beginning in August of 1950 the taxpayer purchased 1,500 of these "May wheat futures contracts," each of which entitled its purchaser to have 1,000 bushels of wheat delivered to him during the month of May, 1952, in the market designated in the contract. Four hundred eighty-five of these 1,500 contracts were purchased after September 23, 1950. All of the contracts were held more than six months and were closed out at substantial gains beginning in February of 1951. Ordinarily under the law in force then and now each would have been entitled to long term capital gain treatment in the income tax return of plaintiffs.

However, the taxpayer also made 1,615 short sales of May wheat beginning in August of 1950. Three hundred sixty-five of these sales were consummated after September 23, 1950. All were closed out at losses at various dates between December 16, 1950 and March 16, 1950. It is the effect of these short sales purchased after September 23, 1950 on the holding periods of the contracts purchased that is the crucial problem.

On September 23, 1950, Section 117($l$) (1) became effective as an amendment to the Internal Revenue Code of 1939, 26 U.S.C.A. § 117($l$) (1). The effect of that amendment is to provide that if a taxpayer purchases an item of property, and if before he has owned it for six months he makes a short sale of a substantially identical item of property, then he cannot establish a six-month long term capital gain holding period on the purchased item until he has closed out the short sale, at which time his holding period begins anew. The pertinent language of Section 117($l$) is as follows:

"(1) Short sales, etc. In the case of a short sale of property made by the taxpayer after the date of the enactment of the Internal Revenue Act of 1950:

"(1) Short-term gains and holding periods. If substantially identical property has been held by the taxpayer on the date of such short sale for not more than 6 months * * *.

"(A) any gain upon the closing of such short sale shall be considered as a gain upon the sale or exchange of a capital asset held for not more than 6 months * * * and

"(B) the holding period of such substantially identical property shall be considered to begin * * * on the date of the closing of the short sale, * * * This subparagraph shall apply to such substantially identical property in the order of the dates of the acquisition of such property, but only to so much of such property as does not exceed the quantity sold short. * * *"

Both the taxpayer and the government agree that only those short sales consummated after September 23, 1950, may be matched against contracts purchased by taxpayer. The difficulty comes in deciding *against which contracts purchased are the short sales to be matched.*

Three interpretations have been advanced here as constituting a correct application of the above statute to the transactions as outlined:

1) The Commissioner would apply the first short sale consummated after enactment of the statute against the first contract purchased by the taxpayer in August, 1950, apply the second short sale consummated against the second contract purchased after August, 1950, and so on until each of the 365 short sales consummated after September 23, 1950, were matched against each of the first 365 contracts purchased by the taxpayer regardless of the fact that such contracts were purchased and the holding periods commenced before the effective date of the amendment.

2) The taxpayer's preferred theory would match the first short sale consummated against the first contract purchased, and continue with a successive matching process until the 1,251st short sale (the first one after the effective date of the statute) is matched against the 1,251st contract purchased. This matching would continue until short sales 1,251 through 1,500 were matched against contracts purchased 1,251 through 1,500, with 115 short sales in excess of contracts purchased which are not affected by the amendment. This would result in a refund to the taxpayer in the amount of $28,158.80 plus interest.

3) The taxpayer's alternative theory would ignore all transactions occurring before September 23, 1950, and the first short sale thereafter would be matched against the first contract purchased thereafter, and continue successive matching in order of acquisition until all 365 short sales made after September 23, 1950, were accounted for. This would result in a refund to the taxpayer of $19,330.13, plus interest.

The principal objection of taxpayer's counsel to the interpretation urged by the government is that it would have a retroactive effect. Taxpayer argues that his purchase of these contracts before the effective date of the amendment and the commencement of the running of the holding periods for such contracts should not be blighted by the effect of the amendment which obviously was designed to affect transactions prospectively, not retrospectively.

It is the opinion of the Court that the third of the above alternatives best reflects Congressional intent. It is consistent with the language of the statute and operates prospectively.

The taxpayer is entitled to a refund of taxes in the amount of $19,330.13, plus interest.